570 So.2d 979 (1990)
John Lewis RUSSELL, III, Appellant/Cross Appellee,
v.
MIAMI HERALD PUBLISHING CO., Appellee/Cross Appellant,
v.
STATE of Florida, Cross Appellee.
No. 89-01468.
District Court of Appeal of Florida, Second District.
July 6, 1990.
*980 Richard S. Blunt, Tampa, for appellant/cross appellee.
George K. Rahdert and David S. Bralow of Rahdert & Anderson, St. Petersburg, for appellee/cross appellant.
Robert A. Butterworth, Atty. Gen., Tallahassee, and Anne Y. Swing, Asst. Atty. Gen., Tampa, for cross appellee.
PARKER, Acting Chief Judge.
John Lewis Russell, III, appeals a trial court order which allowed the Miami Herald Publishing Company to intervene in three cases which are separate criminal proceedings from 1979, 1981, and 1984 for the purpose of having the expunction orders entered in each of those cases vacated; vacated the expunction orders in two of the three cases; denied Russell's motion for order to show cause why the Herald should not be held in contempt; and denied Russell's request to have the Herald reveal its sources. The Herald cross appeals the same order, alleging the trial judge erred in not vacating the one expunction order and further erred in ruling that the standards designed to protect the constitutional and common law right to access is inapplicable to a court's consideration of a motion to vacate an expunction order. Russell also challenges the constitutionality of section 943.058, Florida Statutes (Supp. 1980). We reverse.
The criminal records of Russell relevant to this appeal, all from Hillsborough County, are as follows:

 Case No./Offense Disposition Expunction
 79-7292B Nolo plea; Withheld 6/13/80 order
 Misdemeanor charge[1] adjudication expunging records
 79-4348A Never filed as 10/3/80 order
 Carrying concealed felony expunging records
 firearm/felony
 81-8465E Dismissed 7/6/82 order
 Grand theft expunging records
 84-3173A No information filed 12/4/84 order
 Possession of expunging records
 cocaine and drug
 paraphernalia

*981 In 1989, the Herald assigned an investigative reporter to do an article concerning a Florida nonprofit charitable organization, Bureau of Missing Children, Inc., of which Russell is the chief executive officer. Through the course of the reporter's investigation, the Herald learned that Russell had been arrested on several occasions and that Russell had the criminal history records expunged. The Herald learned from an unknown source the details of the cases, the case numbers, and the dates and nature of the orders expunging the records.
The Herald sought to intervene in these cases and to vacate expunction orders and unseal court records involving all criminal cases against Russell except the 1979 misdemeanor charge. The Herald sought access to the judicial records only and not to law enforcement or other agency records. Russell challenged the Herald's standing to intervene and filed a motion for order to show cause why the Herald was not in contempt for obtaining and publishing criminal history information relating to Russell and further requested that the trial court order the Herald to disclose its source of information.
At a hearing on the merits, the judge ruled that the Miami Herald had standing to question the validity of the expunction orders. The judge then ruled that the trial court had discretion to seal or expunge its own judicial records. The judge further ruled that other criminal history records could be sealed or expunged as long as the requirements of section 943.058(2)(a)-(d), which will be set out below, are met. Finally, the judge ruled that the standards designed to protect the public's right to access was irrelevant to its determination of the motion to vacate the expunction orders.
Applying these rulings to the facts of these cases, the trial court ruled that the expunction ordered in the 1979 felony case, as to both the court's own judicial records and the other criminal history records, was properly entered and refused to vacate that order. Relative to the 1981 and 1984 cases, as to both the court's own judicial records and the other criminal history records, the trial judge ruled that the trial court had abused its discretion in entering the expunction orders and vacated those orders. The judge ruled that there had to be a showing of unusual circumstances in order for the trial judges to have ordered the expunctions. He then found that no unusual circumstances existed at the time the expunction orders were entered.
Preliminarily, we hold that the trial court had jurisdiction to rehear and vacate the expungement orders, see Johnson v. State, 336 So.2d 93, 95 (Fla. 1976); that the Herald does have standing in this proceeding, see State ex rel. Miami Herald Publishing Company v. McIntosh, 340 So.2d 904 (Fla. 1976); and that the doctrine of res judicata does not bar the litigation of these issues because there is no identity of the parties. See Miller v. Cowart, 546 So.2d 768 (Fla. 2d DCA 1989).
The expunction orders at issue are governed by section 943.058, Florida Statutes (Supp. 1980).[2] The statute provides:
943.058 Criminal history expunction or sealing. 
(2) The courts of this state shall continue to have jurisdiction over their own procedures, including the keeping, sealing, expunction, or correction of judicial records containing criminal history information. The courts may order the sealing or expunction of any other criminal history record provided:
(a) The person who is the subject of the record has never previously been adjudicated guilty of a criminal offense or comparable ordinance violation;

*982 (b) The person who is the subject of the record has not been adjudicated guilty of any of the charges stemming from the arrest or alleged criminal activity to which the records expunction petition pertains;
(c) The person who is the subject of the record has not secured a prior records expunction or sealing under this section, former s. 893.14, or former s. 901.33; and
(d) Such record has been sealed under this section, former s. 893.14, or former s. 901.33 for at least 10 years; except that, this condition shall not apply in any instance in which an indictment or information was not filed against the person who is the subject of the record.
(3) Notwithstanding subsection (2), criminal history records maintained by the Department of Law Enforcement may be ordered expunged only upon a specific finding by a circuit court of unusual circumstances requiring the exercise of the extraordinary equitable powers of the court. Upon a finding that the criteria set out in paragraphs (2)(a)-(c) have been met, the records maintained by the department may be ordered sealed by any court of competent jurisdiction; and thereafter such records and other records sealed pursuant to this section, former s. 893.14, former s. 901.33, or similar laws, shall be nonpublic records, available only to the subject, his attorney, or to criminal justice agencies for their respective criminal justice purposes. An order sealing criminal history records pursuant to this subsection shall not be construed to require that the records be surrendered to the court, and such records shall continue to be maintained by the department.
§ 943.058, Fla. Stat. (Supp. 1980).
Our first inquiry is the interpretation of section 943.058. The Herald argues that a petitioner must meet the requirements of subsection (2)(a)-(d) in order to have the court's own records sealed or expunged. We disagree with this interpretation. Subsection (2) of the statute differentiates between the court's own records and other criminal history records. The requirements set forth in subsection (2)(a)-(d) apply only to the sealing or expunction of other criminal history records. We, therefore, interpret the statute as allowing a court to seal or expunge its own records, using its sound discretion. This court has recognized that a court has discretion to seal its own records even though a defendant had been adjudged guilty of those offenses. See State v. Urf, 524 So.2d 1118 (Fla. 2d DCA 1988). We recognize that our interpretation of the statute in Urf, which we reaffirm today, conflicts with the fourth district's opinion in State v. Herstik, 475 So.2d 1268 (Fla. 4th DCA 1985).
The next inquiry is the appropriate standard that a court should apply when considering a motion to vacate an order sealing or expunging the court's own records. This is where we believe the judge in this case erred. He ruled that there had to be unusual circumstances for the court to seal the records and that unusual circumstances did not exist in this case. The requirement of unusual circumstances, however, is found in subsection (3). That subsection provides that there must be unusual circumstances, in addition to compliance with the requirements in subsection (2)(a)-(d), for a court to order the expunction of criminal history records maintained by the Department of Law Enforcement. It is wholly inapplicable to the expunction of court records.
We have found no case in Florida which discusses what the relevant inquiry is for a court determining whether a prior expunction order should be vacated. First, we recognize that the press has a general right to access of judicial records. See Nixon v. Warner Communications, Inc., 435 U.S. 589, 98 S.Ct. 1306, 55 L.Ed.2d 570 (1978); Globe Newspaper Co. v. Pokaski, 868 F.2d 497 (1st Cir.1989). We determine today that in order for section 943.058 to be constitutional, the court must apply the three-pronged test which the United States Supreme Court enunciated in Press-Enterprise Company v. Superior Court of California, County of Riverside, 478 U.S. 1, 106 S.Ct. 2735, 92 L.Ed.2d 1 (1986) when considering a request for closure of court records. The supreme court ruled that when a right of access attaches to a proceeding, closure can be ordered if (1) closure *983 serves a compelling interest; (2) there is a "substantial probability" that, in the absence of closure, that compelling interest would be harmed; and (3) there are not alternatives to closure that would adequately protect that compelling interest. 106 S.Ct. at 2743. Similarly, the Florida Supreme Court has held that for closure to be permissible, the proponent must meet the following three-part test: (1) closure is necessary to prevent a serious and imminent threat to the administration of justice; (2) no less restrictive alternatives are available; and (3) closure would be effective in protecting the rights of the accused, without being broader than necessary to accomplish this purpose. Bundy v. State, 455 So.2d 330 (Fla. 1984).
This case, however, is somewhat unique in that Russell's records have been sealed for several years. We believe that the sealings in these cases must be afforded a presumption of correctness. Cf. Tallahassee Democrat, Inc. v. Willis, 370 So.2d 867 (Fla. 1st DCA 1979) (press does not have a first amendment right to require the opening of a court record properly sealed). The Herald, therefore, as the movant, must have the burden of proof in these proceedings. To accomplish this purpose, we modify the Press-Enterprise test for these proceedings as follows: (1) vacation of the expunction order would serve the public interest; (2) there is a "substantial probability" that, in the absence of vacation of the closure order, the public interest would be harmed; and (3) no less restrictive alternatives are available.
We reverse the judge's order which vacated the expunction orders relating to other criminal history records. The Herald never requested access to those records, and the original expunction orders, as they relate to other criminal history records, should stand.
Having reached these decisions, we certify to the supreme court the following two questions of great public importance:
I. CAN A TRIAL COURT SEAL OR EXPUNGE ITS OWN COURT RECORDS WHERE THE DEFENDANT SEEKING THIS RELIEF CANNOT COMPLY WITH SECTION 943.058(2)(a)-(d)?
II. WHAT IS THE APPROPRIATE INQUIRY FOR A COURT WHEN CONSIDERING A MOTION TO VACATE AN ORDER SEALING OR EXPUNGING COURT RECORDS?
We affirm the judge's ruling that the Herald should not be held in contempt for publishing truthful information which it lawfully received. See The Florida Star v. B.J.F., 491 U.S. 524, 109 S.Ct. 2603, 105 L.Ed.2d 443 (1989). We also affirm his ruling of not requiring the Herald to reveal its sources. See Morgan v. State, 337 So.2d 951 (Fla. 1976). We have considered all arguments raised on appeal and cross appeal. The issues not specifically addressed in this opinion are deemed to be without merit.
We reverse the court's order insofar as it vacated the expunction orders relating to case numbers 81-8465E and 84-3173A. We remand to the trial court for a new hearing as to the current appropriateness of the expunction of court records in all three contested cases, i.e., case numbers 79-4348A, 81-8465E, and 84-3173A. At such hearing, the Herald shall have the burden of proof and shall present evidence relevant to the modified Press-Enterprise test that we have set forth in this opinion. We also reverse the order insofar as it vacated the expunction orders as they relate to other criminal history records. We affirm the order in all other respects.
Affirmed in part; reversed in part; and remanded.
PATTERSON, J., concurs.
ALTENBERND, J., concurs specially.
ALTENBERND, Judge, concurring.
I concur with Judge Parker's decision in this difficult case. Because we have certified two questions to the supreme court, I merely comment on three troubling aspects of this problem.
First, we are holding that this procedure must be provided to the Miami Herald for section 943.058(2), Florida Statutes (Supp. 1980), and our own judicial rules to satisfy the first amendment. Even if this procedure is not constitutionally essential, it has merit as a matter of common law.
*984 Second, we are requiring the Miami Herald to prove that vacation of the expunction order would serve the public interest. I confess some confusion as to the proof necessary to establish the requisite "public interest." If the trial court lacked jurisdiction or authority to enter the order or if the order was obtained upon fraudulent evidence, I can accept the proposition that a vacation of the expunction order would serve the public interest. I am very concerned that this process could be abused in cases in which the "public interest" is established by evidence of events after the conclusion of the criminal proceeding. This seems similar to granting the newspaper relief from the earlier order on the ground that it is "no longer equitable" to enforce the order. Cf. Fla.R.Civ.P. 1.540(b)(5).
Expunction is intended to give a person a fresh start or a second chance. In cases in which the person has been falsely arrested or wrongfully charged, it acts to minimize the harm caused by incorrect government activity. Undoubtedly, there are many fine citizens who have been given a break by understanding trial judges at some point in their lives. I do not believe the first amendment or the policies strongly supporting access to court records compel courts to reveal unproven accusations of drunkenness, petit theft, or other minor crimes, which occurred ten or more years ago, merely because a citizen has become a person of public interest. Although I do not question the motives or integrity of the Miami Herald in this specific case, I do not believe that, as a general rule, a public figure should be haled into court under the modified Press-Enterprise standards for a public rehearing of the expunction of some youthful transgression  merely because enquiring minds wish to know.
On the other hand, if it is established that the beneficiary of an expunction order did not profit from the act of judicial grace and has been subsequently convicted of other crimes, arguably it is no longer equitable to conceal history. The orders which expunged Mr. Russell's judicial history gave him a limited right to legally deny history. § 943.058(6), Fla. Stat. (1987). Even though expunction, as a method to artificially erase history, is a concept that conflicts with our democratic principles of free speech and access to government records, I believe the courts should be very circumspect at hearings designed to eliminate rights that were earlier extended by the courts.
Third, although a criminal court may always retain subject matter jurisdiction over its sealed records, the same is not true for personal jurisdiction over the recipients of expunction orders. In this case, Mr. Russell voluntarily appeared and did not challenge the court's personal jurisdiction. I question whether the trial court could have entered an order modifying Mr. Russell's right to expunction if Mr. Russell now lived in another state and was not subject to personal jurisdiction in Florida. The procedure used by the Miami Herald effectively allows one private entity to sue another in a criminal court. This suggests that we may be overly generous in granting standing to an outsider in a criminal case when the criminal court has lost jurisdiction over the accused. Procedurally, it might be more appropriate to require an action for declaratory relief in which the paper sued Mr. Russell and the state.
NOTES
[1] Although we recognize that this file remains expunged and for that reason would hesitate to discuss it in this opinion, Russell's attorney fully discussed the exact charge and facts surrounding this charge during a hearing before the lower court. We find it necessary to discuss the charge in this opinion because of its interconnection with the other charges and issues.
[2] This version of the statute became effective on October 1, 1980, and remained in effect until July 5, 1988.